UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

JASON WAWIERNIA, on behalf of Plaintiff
and the class members described herein,

       Plaintiff,

v

LOWE'S HOME CENTERS, LLC,

       Defendant.

Case No. 24-cv-00801
Hon.:  Hala Y. Jarbou
Magistrate Judge:  Sally J. Berens

---

**<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
AND COMPEL ARBITRATION OR, ALTERNATIVELY, TRANSFER THIS MATTER
TO THE WESTERN DISTRICT OF NORTH CAROLINA</u>**

**\*\* <u>ORAL ARGUMENT REQUESTED</u> \*\***

For the reasons set forth in the attached Brief in Support, Defendant, Lowe's Home Centers, LLC, respectfully requests that this Honorable Court dismiss Plaintiff's Class Action Complaint pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* and Fed. R. Civ. P. 12(b)(3) and/or (b)(6) because there is a valid and enforceable forum selection clause and arbitration agreement between Plaintiff and Lowe's Home Centers, LLC.

Concurrence in the relief sought by Defendant was requested from Plaintiff's counsel in accordance with W.D. Mich. LCivR 7.1(d), but was denied.

In addition, counsel for Defendant hereby certifies that the Brief in Support of Defendant's Motion to Dismiss Plaintiff's Class Action Complaint and Compel Arbitration or, Alternatively, Transfer this Matter to the Western District of North Carolina contains 5,513 words utilizing Microsoft Office Standard 2010, in compliance with W.D. LCivR 7.2(b)(i).

Respectfully submitted,

PLUNKETT COONEY

BY:    */s/Jeffrey S. Hengeveld*
        JEFFREY S. HENGEVELD (P66029)
        ERIK H. JOHNSON (P85017)
        Attorney for Defendant
        38505 Woodward Ave., Ste. 100
        Bloomfield Hills, MI  48304
        (248) 594-8202
        jhengeveld@plunkettcooney.com

Dated:  August 30, 2024    ejohnson@plunkettcooney.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

JASON WAWIERNIA, on behalf of Plaintiff
and the class members described herein,          Case No. 24-cv-00801
                                                 Hon.:  Hala Y. Jarbou
          Plaintiff,                             Magistrate Judge:  Sally J. Berens

v

LOWE'S HOME CENTERS, LLC,

          Defendant.

---

**BRIEF IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
AND COMPEL ARBITRATION OR, ALTERNATIVELY, TRANSFER THIS MATTER
TO THE WESTERN DISTRICT OF NORTH CAROLINA**

**\*\* ORAL ARGUMENT REQUESTED \*\***

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF CONTENTS ................................................................................................ i

INDEX OF AUTHORITIES ......................................................................................... ii

STATEMENT OF ISSUES PRESENTED ..................................................................... v

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ..................................... vi

I.      INTRODUCTION ........................................................................................ 1

II.     STATEMENT OF FACTS ............................................................................ 1

   A.   Plaintiff Purchased Gloves Through Lowe's Website .............................. 1

   B.   Terms and Conditions of Use of Lowe's Website. ................................... 2

III.    ARGUMENT ............................................................................................... 5

   A.   Standard of Review. ................................................................................ 5

   B.   Standard to Compel Arbitration Under the Federal Arbitration Act. ...... 6

   C.   The Arbitration Agreement is Valid. ....................................................... 7

       1.   The Parties Agreed to Arbitrate. ..................................................... 8

          a.   Choice of Law ............................................................................ 8

          b.   The Arbitration Provision is Valid Under North Carolina Law. .... 9

       2.   This Dispute is Within the Scope of the Arbitration Agreement. ...... 12

       3.   Congress Did Not Intend for a Claim Under the Magnuson Moss Act to be Non-Arbitrable ........................................................................... 12

       4.   All of Plaintiff's Claims are Subject to Arbitration and There is No Need to Stay This Case. ................................................................... 13

   D.   Waiver of Class Action Is Enforceable ................................................... 14

   E.   This Case Must be Dismissed. ............................................................... 14

IV.   CONCLUSION ......................................................................................... 19

<u>**INDEX OF AUTHORITIES**</u>

**Page(s)**

<u>**Cases**</u>

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ...................................................................................................7

*Altobelli v. Hartmann*,
    499 Mich. 284 (2016) ...............................................................................................9

*American Express Co. v. Italian Colors Restaurant*,
    133 S. Ct. 2304 (2013) ............................................................................................14

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) .................................................................................................14

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
    571 U.S. 49 (2013) ..............................................................................................5, 15

*AtriCure, Inc. v. Meng*,
    12 F.4th 516 (6th Cir. 2021) ....................................................................................8

*Blanton v. Domino's Pizza Franchising LLC*,
    962 F.3d 842 (6th Cir. 2020) .................................................................................11

*Burkhardt v. Bailey*,
    260 Mich. App. 636 (2004)....................................................................................17

*Casella v. Sam's W., Inc.*,
    No. 3:23-CV-102, 2023 WL 8480079 (E.D. Tenn. Oct. 31, 2023)................................13

*Chrysler Corp. v. Skyline Indus. Servs.*,
    448 Mich. 113, 528 N.W.2d 698 (Mich. 1995) ........................................................8

*Ciccio v. SmileDirectClub, LLC*,
    2 F.4th 577 (6th Cir. 2021) ........................................................................11, 12, 16

*Corpening v. MoneyLion Inc.*,
    No. 319CV00282FDWDSC, 2020 WL 13882091 (W.D.N.C. Apr. 22, 2020)...............9

*Davis v. Southern Energy Homes, Inc.*,
    305 F.3d 1268 (11th Cir. 2002)..............................................................................12

*Detroit v. AW Kutsche*,
    309 Mich. 700 (1944)...............................................................................................5

*Fazio v. Lehman Bros., Inc.*,
    340 F.3d 386 (6th Cir. 2003) ...................................................................................8

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) .................................................................................................8

*Gavrilovic v. T-Mobile USA, Inc.,*
No. 21-12709, 2022 WL 1086136 (E.D. Mich. Mar. 25, 2022), *report and recommendation adopted*, No. 21-CV-12709, 2022 WL 1085674 (E.D. Mich. Apr. 11, 2022) ............................................................................... 13

*Harrison v. Tobacco Transp., Inc.,*
139 N.C. App. 561 (2000) ..................................................................... 17

*In re StockX Customer Data Sec. Breach Litig.,*
19 F. 4th 873 (6th Cir. 2021) ................................................................... 7

*Inland Bulk Transfer Co. v. Cummins Engine Co.,*
332 F.3d 1007 (6th Cir. 2003) ................................................................. 6

*Javitch v. First Union Sec., Inc.,*
315 F.3d 619 (6th Cir. 2003) ................................................................... 7

*Keena v. Groupon, Inc.,*
192 F. Supp. 3d 630 (W.D.N.C. 2016) .................................................... 9

*Knight v. Idea Buyer, LLC,*
723 F. App'x 300 (6th Cir. 2018) ............................................................ 6

*Legacy Custom Builders, Inc. v. Rogers,*
345 Mich. App. 514 (2023) .................................................................... 9

*Lovinfosse v. Lowe's Home Centers, LLP.,*
No. 1:23-CV-574 (RDA-LRV), 2024 WL 3732436 (E.D. Va. Aug. 8, 2024) ............... 16

*Miller v. Two State Constr. Co.,*
455 S.E.2d 678 (N.C. Ct. App. 1995) ...................................................... 9

*Mill's Pride, Inc. v. Cont'l Ins. Co.,*
300 F.3d 701 (6th Cir. 2002) ................................................................... 8

*Moreno v. Expedia,*
No. 3:18-CV-105, 2018 WL 3059617 (W.D.N.C. June 20, 2018) ................ 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983) ................................................................... 5, 6, 8, 13

*Pearson & Son Excavating Co. v. W. Recreational Vehicles, Inc.,*
No. 03 CV 40246 FL, 2005 WL 8156057 (E.D. Mich. Dec. 28, 2005), *report and recommendation adopted*, No. CIV. 03-40246, 2006 WL 901724 (E.D. Mich. Mar. 31, 2006) ................................................................... 13

*Piper Aircraft Co. v. Reyno,*
454 U.S. 235, n. 6 (1981) ...................................................................... 15

*Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett,*
734 F.3d 594 (6th Cir. 2013) ................................................................. 14

*Rent-A-Center, W., Inc. v. Jackson,*
561 U.S. 63 (2010) ......................................................................... 11, 14

*RL Regi N. Carolina, LLC v. Lighthouse Cove, LLC*,
    367 N.C. 425 (2014) ............................................................................17

*Scherk v. Alberto–Culver Co.*,
    417 U.S. 506 (1974) .............................................................................6

*Seawright v. Am. Gen. Fin. Servs., Inc.*,
    507 F.3d 967 (6th Cir. 2007) ..............................................................8

*Shearson/Am. Exp., Inc. v. McMahon*,
    482 U.S. 220 (1987) ...........................................................................13

*Smith v. Aegon Cos. Pension Plan*,
    769 F.3d 922 (6th Cir. 2014) ...............................................6, 14, 18

*St. Paul Fire & Marine Ins. Co. v. Ingall*,
    228 Mich. App. 101 (1998) .................................................................17

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ...............................................................................5

*Stout v. J.D. Byrider*,
    228 F.3d 709 (6th Cir. 2000) ...........................................................7, 8

*Straub v. Ford Motor Co.*,
    No. CV 21-10634, 2021 WL 5085830 (E.D. Mich. Nov. 2, 2021) ...............13

*Walton v. Rose Mobile Homes LLC*,
    298 F.3d 470 (5th Cir. 2002) .............................................................12

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(3) ............................................................1, 5, 19

Fed. R. Civ. P. 12(b)(6) ...................................1, 5, 6, 14, 18, 19

**<u>Statutes</u>**

15 U.S.C. § 2310 ............................................................................12

28 U.S.C. § 1404(a) .........................................................6, 14, 15, 18

9 U.S.C. § 1 ...........................................................................1, 6, 19

9 U.S.C. § 2 ...............................................................................7

9 U.S.C. § 3 ...............................................................................7

9 U.S.C. § 4 ...............................................................................7

Restatement (Second) of Conflict of Laws § 187(2) (1971) ......................8

## <u>STATEMENT OF ISSUES PRESENTED</u>

Whether pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq., Fed. R. Civ. P. 12(b)(3) and/or (b)(6), the Court should dismiss Plaintiff's Class Action Complaint because there is a valid and enforceable forum selection clause, arbitration clause, and waiver of class action clause applicable to Plaintiff's online purchase from Lowe's website, or, alternatively, the Court should transfer this case to the Western District of North Carolina?

Defendant Answers: "Yes."

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

Federal Arbitration Act, 9 U.S.C. § 1

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)

*In re StockX Customer Data Sec. Breach Litig.*, 19 F. 4th 873 (6th Cir. 2021)

*Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000)

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)

**BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**
**AND COMPEL ARBITRATION OR, ALTERNATIVELY, TRANSFER THIS MATTER**
**TO THE WESTERN DISTRICT OF NORTH CAROLINA**

## I.    INTRODUCTION

Plaintiff Jason Wawiernia purchased certain pairs of safety gloves through Lowe's website.  In making his purchase online, Plaintiff agreed to be bound by Lowe's Terms and Conditions of Use ("Terms and Conditions") governing its online sales.  Plaintiff also signed up for an account through Lowe's website known as a "MyLowe's Rewards Account" and used his MyLowe's Rewards Account for his purchase of the gloves at issue in this case.  By signing up for and using his MyLowe's Rewards Account, Plaintiff agreed to be bound by the same Terms and Conditions for using Lowe's website for online purchases.  The Terms and Conditions include a venue selection clause (North Carolina), a binding arbitration provision, and waiver of pursuing a class action claim in a representative capacity.  Rather than proceed to binding arbitration in North Carolona, Plaintiff filed a putative Class Action Complaint in this Court.

Because of the valid and enforceable venue selection provision, arbitration provision, and waiver of class action claims, the Court should dismiss Plaintiff's putative Class Action Complaint pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. and Fed. R. Civ. P. 12(b)(3) and/or (b)(6).

## II.    STATEMENT OF FACTS

### A.    Plaintiff Purchased Gloves Through Lowe's Website.

Plaintiff alleges that in April 2024, he saw an advertisement for certain safety gloves on Lowe's website that represented the gloves were made in the United States.  (Compl. ¶ 8-9)  Plaintiff alleges that in reliance on the advertisement, he ordered eight pairs of the gloves

from Lowe's website and paid for them.  (Compl. ¶ 10)  Plaintiff alleges that when the gloves

arrived, they were labeled as being made in China or India.  (Compl.¶ 11)

     **B.**     **Terms and Conditions of Use of Lowe's Website.**

     To place an order to purchase from Lowe's website, a customer must affirmatively

click on the following:



(**Exhibit A, ¶ 7**)

     The hyperlink "Terms" takes the customer to the Terms and Conditions for the

website.  (**Exhibit A, ¶¶ 6, 8**)  The Terms and Conditions include a forum selection clause, an

arbitration provision, a class waiver provision, and a choice of law provision under a section

titled "**Dispute Resolution**" in large, bolded font.  (**Exhibit A, ¶ 6, Ex. 1, p. 11**)

     The forum selection clause states as follows:

> You agree that this agreement and your use of the Site will be governed by the laws of the state of North Carolina. By using the Site, you consent to the exclusive jurisdiction and venue of the courts, tribunals, agencies and other dispute resolution organizations in Charlotte, North Carolina.

(**Exhibit A, ¶ 6, Ex. 1 p. 11**)

     The arbitration agreement states, in bold:

> **Arbitration: Please read this section carefully because it affects rights that you might otherwise have. It provides for resolution of most disputes through arbitration instead of court proceedings.**

(**Exhibit A, ¶ 6 Ex. 1, p. 12**)

     Immediately below that sentence is the following, in bold:

> **Arbitration is different than court. There is no judge or jury, but the arbitrator can award damages. Arbitration is final, binding and subject to only limited review by a court. By using the Site, you agree to give up your right to a trial in court except for certain small claims as described below.**

(**Exhibit A, ¶ 6, Ex. 1, p. 12**)

The scope of the arbitration provision is broad, applying to all claims arising or relating to the customer's use of the website:

> You agree that this arbitration section shall survive termination of this agreement. This section shall be broadly interpreted to encompass all disputes or claims arising out of or relating to your use of the Site. Any dispute or claim made by you against Lowe's or against any of Lowe's subsidiary, parent or affiliated companies arising out of or related to your use of the Site, whether based on contract, statute, tort, fraud, misrepresentation or any other legal theory, will be resolved by binding arbitration, except that either party may elect to have such claims heard in small claims court if they qualify for hearing by such court.

(**Exhibit A, ¶ 6, Ex. 1, p. 12**)

The arbitration provision further provides that "You and Lowe's agree that this agreement evidences a transaction in interstate commerce and this arbitration provision will be interpreted and enforced in accordance with the US Federal Arbitration Act and federal arbitration law."  (**Exhibit A, ¶ 6, Ex. 1, p. 12**)  The provision further provides that "[y]ou agree that this agreement . . . will be governed by the laws of the state of North Carolina" and requires any arbitration be brought and held in Charlotte, North Carolina.  (**Exhibit A, ¶ 6, Ex. 1, p. 11**)

The Terms and Conditions also include a class action waiver, stating in all caps:

> YOU AGREE TO WAIVE, TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW, ANY CLAIMS FOR PUNITIVE OR EXEMPLARY DAMAGES AND ANY RIGHT TO PURSUE CLAIMS ON A CLASS OR CONSOLIDATED BASIS OR IN A REPRESENTATIVE CAPACITY, WHICH RELATE IN ANY WAY TO THE SITE OR THIS AGREEMENT.

(**Exhibit A, ¶ 6, Ex. 1, p. 11-12**)

Plaintiff also signed up for an account through Lowe's website known as a "MyLowe's Rewards Account," which allows a customer to save address and payment information, view past orders, and earn rewards for purchases, among other things.  (**Exhibit A, ¶ 9**)  To sign up for a MyLowe's Rewards account via Lowe's website, a user must provide certain information, such as their first and last names, email address and phone number and then click on a button marked "Create Account." (**Exhibit A, ¶ 10**)  Immediately above the "Create Account" button, it states:



(**Exhibit A, ¶ 11**)

The hyperlink, in blue, "Terms of Use" takes the user to the full text of the Terms and Conditions, which Terms and Conditions are the same for using Lowe's website for online purchases.  (Exhibit A, ¶ 12)  By clicking on the "Create Account" the user is agreeing to the Terms and Conditions.  (**Exhibit A, ¶ 13**)  Once a user has created an account, they may sign into that account on the Lowe's website using their email address and password.  (**Exhibit A, ¶ 14**)  When a user navigates to the sign-in page, they are prompted to enter these log-in credentials and then click a button marked "Sign In."  (**Exhibit A, ¶ 14**)

Immediately above the "Sign In" button, the following text appears:



Clicking on the hyperlink, in blue, "Terms of Use," takes the user to the full text of the Terms and Conditions.  (**Exhibit A**, **¶ 15**)  Each time a user signs into their MyLowe's Rewards Account they are agreeing to the Terms and Conditions.  (**Exhibit A**, **¶ 17**).  Plaintiff signed into his MyLowe's Rewards Account and used his MyLowe's Rewards Account for his purchase of the gloves at issue in this lawsuit.  (**Exhibit A, ¶ 18**)

Because Plaintiff's use of Lowe's website to purchase the gloves at issue is subject to a binding arbitration provision, the Court must dismiss this case pursuant to Fed R. Civ. P. 12(b)(3) and/or (b)(6).

**III.   ARGUMENT**

    **A.     Standard of Review.**

There are long standing federal and Michigan policies favoring the arbitration of claims. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Detroit v. AW Kutsche*, 309 Mich. 700, 703 (1944). A forum selection clause represents the parties' agreement as to the proper forum. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988). "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,* 571 U.S. 49, 60 (2013). Arbitration provisions are, "in effect, a specialized kind of forum-selection clause." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519

(1974). "[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co.*, 571 U.S. at 63 (cleaned up). The party defying the forum-selection clause, bears the burden of establishing that the parties bargained for forum is unwarranted. *Id.* at 63.

Where a case is improperly filed in contravention of a forum-selection clause, the Court has the discretion to either dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or to transfer the case in accordance with Rule 1404(a). *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 934 (6th Cir. 2014). Where there is no valid federal forum to accept transfer, dismissal under Rule 12(b)(6) is appropriate. *Id.*; *see also Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003) (holding that a court may not compel parties to arbitrate outside of its jurisdiction and, instead, must dismiss or stay an action that is subject to arbitration in another forum.); *Knight v. Idea Buyer, LLC*, 723 F. App'x 300, 301 (6th Cir. 2018) ("A party's failure to pursue arbitration in spite of a compulsory arbitration provision means that the party has failed to state a claim," and "a motion to dismiss on such grounds is 'properly construed as a motion . . . under Rule 12(b)(6).'").

### B.    Standard to Compel Arbitration Under the Federal Arbitration Act.

The United States Arbitration Act of 1925, 9 U.S.C. § 1, *et seq.*, commonly referred to as the Federal Arbitration Act (the "FAA"), governs disputes involving the arbitrability of claims.  The FAA advances "a liberal federal policy favoring arbitration agreements , . . . [and] questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  The FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving commerce .

. . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA broadly applies to any transaction directly or indirectly affecting interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995).

Under the FAA, the Court must enforce valid arbitration agreements. *In re StockX Customer Data Sec. Breach Litig.*, 19 F. 4th 873, 878 (6th Cir. 2021); *see also* 9 U.S.C. § 2. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court but instead mandates that the district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3–4).

Given the strong federal policy favoring arbitration, the Court need only determine (1) whether "a valid agreement to arbitrate exists between the parties," and (2) whether "the specific dispute falls within the substantive scope of the agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

### C.    The Arbitration Agreement is Valid.

A valid arbitration agreement exists between Plaintiff and Lowe's.  In evaluating whether to compel arbitration, courts within the Sixth Circuit generally considers four factors: (1) whether the parties agreed to arbitrate, (2) the scope of the arbitration agreement, (3) if federal statutory claims are asserted, whether Congress intended those claims to be non-arbitrable, and (4) if the court concludes that some, but not all, of the claims in the action are subject to arbitration, to stay the remainder of the proceedings pending arbitration.  *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). In making these determinations, "any doubts regarding arbitrability should be resolved in favor of

arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).  Lowe's satisfies each of the *Stout* factors.

### 1.    The Parties Agreed to Arbitrate.

#### a.    Choice of Law.

Because arbitration agreements are fundamentally contracts, courts review the enforceability of an arbitration agreement according to the applicable state law of contract formation. *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (*citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995); *see also Fazio,* 340 F.3d at 393 ("State contract law . . . governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses.").  To determine the applicable state law in diversity cases, the choice-of-law rules of the state in which a district court sits apply.  *AtriCure, Inc. v. Meng*, 12 F.4th 516, 525 (6th Cir. 2021).  This action is pending in federal court in Michigan; therefore, Michigan's choice-of-law rules apply. *Mill's Pride, Inc. v. Cont'l Ins. Co*., 300 F.3d 701, 704 (6th Cir. 2002).

Michigan applies the Restatement (Second) to determine whether a choice-of-law provision in a contract is enforceable. *Chrysler Corp. v. Skyline Indus. Servs*., 448 Mich. 113, 528 N.W.2d 698 (Mich. 1995); *Mill's Pride*, 300 F.3d at 705.  The Restatement provides: "The law of the state chosen by the parties to govern their contractual rights and duties will be applied" unless "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or "(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." Restatement (Second) of Conflict of Laws § 187(2) (1971).

8

Here, the Terms and Conditions has an explicit choice-of-law provision stating that the agreement is governed by North Carolina law. (**Exhibit A, ¶ 6, Ex. 1, p. 11**) North Carolina has a substantial relationship to Lowe's and the underlying transaction because Lowe's is domiciled in North Carolina.  And North Carolina law is not contrary to a fundamental policy of Michigan.  Nor do the laws of North Carolina and Michigan differ in a meaningful way.  Both states have a strong policy favoring arbitration. *See Legacy Custom Builders, Inc. v. Rogers*, 345 Mich. App. 514, 523 (2023) ("The general policy of this State is favorable to arbitration" (quoting *Altobelli v. Hartmann*, 499 Mich. 284, 295 (2016)); *Miller v. Two State Constr. Co.*, 455 S.E.2d 678, 680-81 (N.C. Ct. App. 1995)("North Carolina has a strong public policy favoring arbitration of disputes between parties.").  Therefore, North Carolina law applies to the questions of whether the Parties agreed to arbitrate, and the scope of the arbitration agreement.

> **b.** **The Arbitration Provision is Valid Under North Carolina Law.**

"Under North Carolina law, online consumer agreements are valid and enforceable when a user affirmatively acknowledges and agrees to contractual terms by checking a box or clicking a button as a condition of proceeding with his transaction." *Moreno v. Expedia*, No. 3:18-CV-105, 2018 WL 3059617, at *3 (W.D.N.C. June 20, 2018); *see also Corpening v. MoneyLion Inc.*, No. 319CV00282FDWDSC, 2020 WL 13882091, at *3 (W.D.N.C. Apr. 22, 2020).  "In particular, courts have held that when the terms of use are available to the consumer via a hyperlink, they are bound to those terms if they proceeded with the transaction." *Moreno*, 2018 WL 3059617 (citing *Keena v. Groupon, Inc.,* 192 F. Supp. 3d 630, 636 (W.D.N.C. 2016)).

Here, Plaintiff was required to affirmatively click on the "Place Order" button to check-out and complete the transaction for the gloves.  (**Exhibit A, ¶ 7**)  Immediately and conspicuously under the "Place Order" button it states, "By placing an order, I agree to Lowe's Terms and Privacy Statement." (**Exhibit A, ¶ 7** )  The "Terms" hyperlink contains the full and complete Terms and Conditions, including the arbitration provision.  (**Exhibit A, ¶ 8**)

Moreover, Plaintiff used his MyLowe's Rewards Account to purchase the gloves at issue, which means he had to twice affirmatively accept the Terms and Conditions that are the same Terms and Conditions for his online purchases on Lowe's website.  (**Exhibit A, ¶ 18**)  The first time is when Plaintiff affirmatively clicked on the "Create Account" button, which immediately and conspicuously above it states, "By clicking "Create Account," you agree to Lowe's Terms of Use, Personal Account Terms, Privacy Statement and Notice of Financial Incentive/Loyalty Programs, including receiving marking emails from Lowe's." **Exhibit A, ¶ 11**)  The second time is when Plaintiff signed into and used his MyLowe's Rewards Account to purchase the gloves at issue.  At sign in, Plaintiff affirmatively clicked on the "Sign In" button, which immediately and conspicuously states above it, "By signing in to Lowes.com, you're agreeing to our Terms of Use, including Personal Account Terms and/or PRO Account and MVPs Terms as applicable, Privacy Statement, and Notice of Financial Incentive/Loyalty Programs."  (**Exhibit A, ¶ 15**)

Given these facts and circumstances, there is no doubt that Plaintiff agreed to the arbitration provision in the Terms and Conditions and the Parties have a valid and enforceable arbitration agreement.

Although it is clear the Parties have a valid and enforceable agreement to arbitrate, even if this Court has a doubt about its validity or whether the claims are arbitrable, the issue of arbitrability is to be decided by the arbitrator.  In *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 583 (6th Cir. 2021), the Sixth Circuit held "[w]hether the parties have agreed to arbitrate or whether their agreement covers a particular controversy are gateway arbitrability questions . . . . [and] parties may decide to send these gateway questions to an arbitrator rather than a court."  (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).   The Sixth Circuit further noted "the Supreme Court requires 'clear and unmistakable' evidence that the parties intended to delegate gateway questions to the arbitrator . . . . and under Sixth Circuit precedent, there is such evidence where the parties incorporated . . . arbitration rules into their Agreement." *Ciccio*, 2 F.4th at 583 (citing *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020)).  The Sixth Circuit found that by incorporating the American Arbitration Association rules for the arbitration that the parties agreed to an arbitrator deciding the gateway questions of arbitrability.  *Id.*

Like *Ciccio*, Lowe's Terms and Conditions also provide for the arbitration to occur pursuant to the American Arbitration Association rules, stating, "The arbitration of any dispute or claim shall be conducted by and under the rules of the American Arbitration Association (or another nationwide arbitration organization, provided both parties mutually agree on an alternative arbitral tribunal), and there will be NO JURY TRIAL."  (**Exhibit A, ¶ 6, Ex. 1, p. 12**)  Thus, any doubt about the validity of the arbitration provision must be resolved by the arbitrator in the correct forum, North Carolina.

For these reasons, the Court should find that the Parties have a valid and enforceable arbitration provision.

11

**2.  This Dispute is Within the Scope of the Arbitration Agreement.**

The arbitration provision covers this dispute.  The arbitration provision states expressly that it "shall be broadly interpreted to encompass all disputes or claims arising out of or relating to your use of the Site."  (**Exhibit A, ¶ 6, Ex. 1, p. 12**)  The arbitration provision does not limit the types of claims or disputes and includes all claims and disputes "whether based on contract, statute, tort, fraud, misrepresentation or any other legal theory" that are subject to binding arbitration.  (**Exhibit A, ¶ 6, Ex. 1, p. 12**)  Moreover, the scope of the arbitration provision is a gateway question of arbitration and any issue about whether the arbitration provision applies to this dispute is to be decided by the arbitrator.  *Ciccio*, 2 F.4th at 583.

Plaintiff's purported claims arise from his use of Lowe's website and sound in breach of warranty, unjust enrichment, fraud, and violation of a consumer statute that are all claims encompassed by the broad scope of the arbitration provision.

For these reasons, the Court should find that the scope of the arbitration provision covers this dispute.

**3.  Congress Did Not Intend for a Claim Under the Magnuson Moss Act to be Non-Arbitrable.**

Plaintiff's only federal claim is under the Magnuson Moss Warrant Act ("MMWA"), 15 U.S.C. § 2310.  (Compl. ¶ 41)  The Sixth Circuit has not addressed whether the MMWA precludes arbitration.  However, the Fifth and Eleventh Circuits have held that the MMWA does not preclude binding arbitration of claims pursuant to a valid binding arbitration agreement, which the courts must enforce pursuant to the FAA.  *See Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 479 (5th Cir. 2002) and *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268, 1280 (11th Cir. 2002).  At least one Michigan court expressly adopted this

reasoning.  *See Pearson & Son Excavating Co. v. W. Recreational Vehicles, Inc.*, No. 03 CV 40246 FL, 2005 WL 8156057, at *8 (E.D. Mich. Dec. 28, 2005), *report and recommendation adopted*, No. CIV. 03-40246, 2006 WL 901724 (E.D. Mich. Mar. 31, 2006).  The *Pearson & Son Excavating Co.* court found that the Fifth Circuit and the Eleventh Circuit carefully considered the legislative history and provisions of the MMWA, as well as the FAA, and determined that Congress did not intend to preclude arbitration of warranty claims pursuant to a valid arbitration agreement.  *Pearson & Son Excavating Co.*, 2005 WL 8156057, at *8;  *see also Casella v. Sam's W., Inc.*, No. 3:23-CV-102, 2023 WL 8480079, at *4 (E.D. Tenn. Oct. 31, 2023) ("The Court finds the reasoning of the Fifth and Eleventh Circuits persuasive and agrees that Magnuson-Moss Warranty Act claims are arbitrable, especially when considering the 'liberal federal policy favoring arbitration agreements.'" citing *Moses H. Cone Mem'l Hosp*, 460 U.S. at 24.) and *Straub v. Ford Motor Co.*, No. CV 21-10634, 2021 WL 5085830, at *13 (E.D. Mich. Nov. 2, 2021) (compelling arbitration of a MMWA claim).

Further, the party opposing arbitration bears the burden "to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987); *Gavrilovic v. T-Mobile USA, Inc.*, No. 21-12709, 2022 WL 1086136, at *3 (E.D. Mich. Mar. 25, 2022), *report and recommendation adopted*, No. 21-CV-12709, 2022 WL 1085674 (E.D. Mich. Apr. 11, 2022).

For these reasons, the Court should find that the MMWA does not preclude arbitration.

### 4.    All of Plaintiff's Claims are Subject to Arbitration and There is No Need to Stay This Case.

The broad scope of the arbitration provision makes it unnecessary to stay any part of this case because all of Plaintiff's claims are subject to arbitration in North Carolina.

### D.    Waiver of Class Action Is Enforceable.

The Supreme Court has enforced class action waivers in arbitration agreements governed by the FAA.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011) (finding that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration").  In *American Express Co. v. Italian Colors Restaurant*, the Supreme Court similarly stated that, with respect to a contract with a class action waiver, "courts must 'rigorously enforce' arbitration agreements according to their terms . . . unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013); *see also Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 600 (6th Cir. 2013) (holding that a class action right does not render an arbitration agreement unenforceable).

Here, the Terms and Conditions clearly advised Plaintiff that his use of Lowe's website precludes him from brining a class action claim in a representative capacity.  (**Exhibit A, ¶ 6, Ex. 1, p. 11-12**)  Thus, the Court should enforce the arbitration provision and find that Plaintiff has waived any class action claims.

### E.    This Case Must be Dismissed.

Where a case is improperly filed in contravention of a forum-selection clause, the Court has the discretion to either dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or to transfer the case in accordance with Rule 1404(a). *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 934 (6th Cir. 2014).  Here, the Court should dismiss this action under the doctrine of *forum non conveniens*.  Because the Parties have contracted to arbitrate all disputes before an arbitrator, the contracts must be enforced "according to their terms."  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

14

Typically, *forum non conveniens* motions are evaluated under 28 U.S.C. § 1404(a), considering factors such as "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, n. 6 (1981). "[T]he district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Const. Co.,* 571 U.S. at 62-63 (quoting § 1404(a)).

The analysis changes, however, in three significant ways when there is a forum-selection clause.  First, while plaintiffs normally choose the forum, the plaintiff's choice of forum in this case "merits no weight." *Id.* at 63.  That is because the parties exercised their choice of forum in the bargained for contract containing the forum-selection clause. *Id.* The first choice, not the latter, controls. *Id.*   Second, district courts "should not consider arguments about the parties' private interests." *Id.* at 64.  When the parties agreed to a particular forum, they waived the right to "challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses." *Id.*  Finally, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." "When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Id.* at 66.  "In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Id.*

Here, the bargained for arbitration provision requiring the dispute to be arbitrated in North Carolina has controlling weight. Plaintiff will be unable to argue otherwise.  Plaintiff is likely to raise that he lives in Michigan.  But, as noted above, Plaintiff waived the convenience of the forum when he agreed to resolve disputes in North Carolina.   Moreover, the transaction at issue in this case involves an internet transaction for gloves from Lowe's website. This is not a case where the features of the dispute will have any bearing on where this matter should be resolved.

It is also anticipated that Plaintiff will argue that the Lowe's arbitration provision is unenforceable because it is illusory as one court recently held in Virginia. *See Lovinfosse v. Lowe's Home Centers, LLP.*, No. 1:23-CV-574 (RDA-LRV), 2024 WL 3732436 (E.D. Va. Aug. 8, 2024).  In that case, the district court found that while there was mutual assent to the Terms and Conditions, the court could not compel arbitration because Lowe's had unfettered discretion to modify or revoke the arbitration provision thus rendering the promise to arbitrate illusory. *Id.* at *7.  But this argument is a red herring.

The threshold questions presented in this motion are where should this dispute be adjudicated and who should decide the gateway question of arbitrability.  As explained above, this dispute must be adjudicated in North Carolina pursuant to the forum selection clause and the gateway question of arbitrability must be decided by an arbitrator because the Parties incorporated the American Arbitration Association rules into the Parties' agreement. *See Ciccio*, 2 F.4th at 583.  Whether the Parties' agreement is illusory is a merits question to be decided only after the dispute is in the correct forum and before the proper decision-maker.  Here, this dispute must proceed in North Carolina and the threshold question of arbitrability must be decided by an arbitrator, therefore, dismissal is warranted.

16

But even if the Court were to consider whether the Lowe's Terms and Conditions are illusory, the plain meaning of the Terms and Conditions makes clear that they are not. A contract must be interpreted according to its plain and ordinary meaning. *RL Regi N. Carolina, LLC v. Lighthouse Cove, LLC*, 367 N.C. 425, 428 (2014); *accord St. Paul Fire & Marine Ins. Co. v. Ingall*, 228 Mich. App. 101, 107 (1998).  When the language of the contract is clear and unambiguous, interpretation is limited to the actual words used, and an unambiguous contract must be enforced according to its terms. *Harrison v. Tobacco Transp., Inc.*, 139 N.C. App. 561, 567 (2000); *accord Burkhardt v. Bailey*, 260 Mich. App. 636, 656 (2004).  The Terms and Conditions say the following:

> You agree that Lowe's may change, terminate, modify, add, end or delete any of these the terms and conditions (including, without limitation, the Terms) under which the Site is offered at any time and without notice to you.
>
> . . .
>
> Any changes or modifications *will be effective immediately upon posting* the revisions to https://www.lowes.com/l/about/terms-and-conditions-of-use, and you waive any right you may have to receive specific notice of such changes or modifications. *Your continued use or participation constitutes your agreement to any changes or modifications.*

(**Exhibit A, ¶ 6, Ex. 1, p. 13** (emphasis added))

The plain meaning of the above language establishes that Lowe's has the right to modify its Terms and Conditions *prospectively*.  Any modification becomes effective "immediately," not retroactively.  There is no interpretation of the above language that is susceptible to a reading that any modification to the Terms and Conditions applies retroactively.  The Terms and Conditions in effect at the time of Plaintiff's purchases govern this dispute, which are the same Terms and Conditions in effect today.  And if a court or arbitrator were to find the "Change to the Terms" provision in the Terms and Conditions

17

unenforceable, which they should not, the Parties agreed that "the invalid or unenforceable provision will be superseded by a valid, enforceable provision that most closely matches the intent of the original provision, and the remainder of the agreement shall continue to govern your use of the Site." (**Exhibit A, ¶ 6, Ex. 1, p. 14**).  What language would most closely match the intent of the original provision is a question to be resolved by an arbitrator in Charolette, North Carolina.

The Court has the discretion to either dismiss the action pursuant to Rule 12(b)(6), or to transfer the case in accordance with 28 U.S.C. § 1404(a). *See Smith*, 769 F.3d at 934.  The Court can transfer this matter to the Western District of North Carolina. However, because the Parties' agreement requires arbitration, which cannot be reasonably disputed by Plaintiff, there is no federal forum in which to transfer this case.  Generally, it is simply more efficient to transfer a case from one federal court to another, because it avoids refiling the matter. Here, however, the opposite would be true.  Transferring this case to the Western District of North Carolina would duplicate the efforts necessary to arbitrate this case and should only be done if the Court finds that dismissal is not appropriate. After transfer, Lowe's would need to file a new motion seeking to compel arbitration and wait for a ruling.  It would be far more practical to dismiss this case without prejudice and let the Parties file for arbitration in North Carolina.

Accordingly, given that there is nothing particularly unusual about this case, the interest of justice is served by holding Parties to their bargain.  The Court should dismiss this action under Rule 12(b)(6), or, alternatively, transfer this case to the Western District of North Carolina.

**IV.    CONCLUSION**

WHEREFORE, Defendant, Lowe's Home Centers, LLC, moves this Honorable Court to dismiss Plaintiff's Class Action Complaint without prejudice pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. and Fed. R. Civ. P. 12(b)(3) and/or (b)(6), and seeks all other relief that is just and proper.  Alternatively, if the Court for any reason decides dismissal is not appropriate, the matter should be transferred to the Western District of North Carolina.

Respectfully submitted,

PLUNKETT COONEY

BY:    */s/Jeffrey S. Hengeveld*
JEFFREY S. HENGEVELD (P66029)
ERIK H. JOHNSON (P85017)
Attorney for Defendant
38505 Woodward Ave., Ste. 100
Bloomfield Hills, MI  48304
(248) 594-8202
jhengeveld@plunkettcooney.com
Dated:  August 30, 2024      ejohnson@plunkettcooney.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of August, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF system and that I have mailed by United States Postal Service to any parties that are not ECF participants.

*/s/Debra L. Vogt*
DEBRA L. VOGT

Open.11349.42352.35112676-1

19